**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

BYRON POLLARD-EL, JR.,           )
                                 )
    Petitioner,                  )
                                 )
    vs.                          )    Case No. 4:18-CV-590 SRW
                                 )
STANLEY PAYNE,                   )
                                 )
    Respondent(s).               )

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on the Amended Petition of Byron Pollard-El, Jr. for a writ of habeas corpus under 28 U.S.C. § 2254. The State has filed a response and Petitioner replied. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.      BACKGROUND**

Petitioner is currently incarcerated at the Eastern Reception Diagnostic and Correctional Center in Bonne Terre, Missouri. Petitioner was charged with one count of first-degree murder in violation of Mo. Rev. Stat. § 565.020 (Count I); two counts of armed criminal action in violation of Mo. Rev. Stat. § 571.015 (Counts II and IV); one count of first-degree assault in violation of Mo. Rev. Stat. § 565.050 (Count III); one count of attempted distribution of a controlled substance in violation of Mo. Rev. Stat. § 195.211 (Count V); and possession of less than 35 grams of marijuana in violation of Mo. Rev. Stat. § 195.202 (Count VI). (ECF No. 26-4 at 18-26, 47-48). Petitioner, through counsel, filed a motion to suppress his recorded confession to police

that he shot and killed the victim, which was denied by the State circuit court. (ECF No. 26-4 at 30-35, 45).

On March 7, 2014, in exchange for the State amending the first-degree murder charge to second-degree murder, Petitioner pled guilty to second-degree murder and the remaining charges. (ECF No. 26-11 at 48-79). On March 10, 2014, new counsel entered an appearance to represent Petitioner, and orally moved to withdraw the guilty plea pursuant to Missouri Court Rule 29.07(d). (ECF Nos. 26-4 at 49, 26-11 at 79-90). The circuit court denied Petitioner's motion to withdraw his guilty plea. (ECF No. 26-1 at 90). Subsequently, Petitioner was sentenced to terms of life imprisonment for Counts I, II, and IV, and terms of fifteen, seven, and one years for Counts III, V, and VI, respectively. All counts were to run concurrently, except the fifteen-year sentence on Count III which was to run consecutively. (ECF No. 26-4 at 52-55).

After receiving leave, Petitioner filed a late notice of appeal to the Missouri Court of Appeals for the Eastern District, Case No. ED101546, asserting the circuit court erred in denying his Rule 29.07 motion to withdraw his guilty plea. (ECF Nos. 26-1 at 1-25, 26-4 at 56-58, 64-70). The state appellate court affirmed Petitioner's conviction and sentence on September 8, 2015, and a mandate was issued on October 2, 2015. (ECF No. 26-3 at 1-7). *See State v. Pollard*, 469 S.W.3d 506 (Mo. App. 2015).

On April 17, 2014, prior to the appeal in ED101546, Petitioner filed a Motion to Vacate, Set Aside or Correct Judgment and Sentence pursuant to Rule 24.035. (ECF No. 26-9 at 34-52). The Motion was held in abeyance pending the appellate court's decision. (ECF No. 26-12 at 3). On December 29, 2015, Petitioner, represented by appointed counsel, filed an Amended Motion and a Request for an Evidentiary Hearing. (ECF No. 26-9 at 59-81). In the Amended Motion, Petitioner argued the trial court erred when it denied him the opportunity to withdraw his guilty

2

plea because his counsel was ineffective by (1) misleading him about the definition of a life sentence and (2) pressuring him into pleading guilty despite his insistence on going to trial. *Id.* The circuit court granted in part Petitioner's request for an evidentiary hearing and held the hearing on June 10, 2016. (ECF No. 26-9 at 84-85). On September 8, 2016, the circuit court denied Petitioner's request for post-conviction relief. (ECF No. 26-9 at 86-95).

On October 17, 2016, Petitioner filed a notice of appeal with the Missouri Court of Appeals for the Eastern District. (ECF No. 26-9 at 98-102). Petitioner raised one sole issue on appeal from the denial of post-conviction relief, arguing the circuit court erred in denying his Rule 24.035 motion because "the record clearly demonstrated that his counsel misled him regarding the meaning of a 'life' sentence, in that counsel stated a 'life' sentence is considered to be the same as a 30-year sentence and 'the only difference is you're on lifetime parole' on a life sentence." (ECF No. 26-6 at 30). On January 16, 2018, the appellate court affirmed the circuit court's denial of post-conviction relief holding that "[n]othing in the record indicates [Petitioner's] mistaken belief that there is no difference between a life sentence and a 30-year sentence was reasonable." (ECF No. 26-10 at 1-8). S*ee Pollard v. State*, 537 S.W.3d 403 (Mo. App. 2018). The mandate was issued on February 9, 2018.

On April 12, 2018, Petitioner, proceeding as a self-represented litigant, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF No. 1). On October 9, 2018, after retaining counsel and seeking leave from this Court, Petitioner filed an Amended Petition. (ECF No. 36). The Amended Petition raises five grounds for relief: (1) Petitioner's rights to due process and effective assistance of counsel were violated when plea counsel misled him regarding the meaning of a life sentence resulting in his guilty plea not being knowingly, intelligently, and voluntarily made; (2) Petitioner was denied due process and effective

3

assistance of counsel when plea counsel failed to file a motion to suppress historical cell phone records that were seized without a warrant; (3) Petitioner was denied due process and effective assistance of counsel when plea counsel failed to argue in a motion to suppress that Petitioner's confession was involuntary due to the length and conditions of his detention; (4) Petitioner was denied due process and effective assistance of counsel when plea counsel failed to argue in a motion to suppress that his waiver of his Miranda rights was not voluntary because the detectives shifted their questioning and continued questioning after he requested an attorney; and (5) Petitioner was denied due process and effective assistance of counsel when trial counsel improperly advised him not to testify at the suppression hearing. *Id.*

On January 18, 2019, Respondent filed a Response to Order to Show Cause. (ECF No. 26). Respondent argues Petitioner's first claim was denied on the merits in state court and the denial is entitled to deference. As to the remaining claims, Petitioner asserts they are procedurally defaulted and meritless. *Id.* On June 19, 2019, Petitioner filed a Reply. (ECF No. 33).

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

III.    **DISCUSSION**

    **A. Ground One: Ineffective assistance of plea counsel for misleading Petitioner on the meaning of a life sentence.**

In his first ground for relief, Petitioner asserts his plea counsel was ineffective for misleading him about the meaning of a life sentence and, as a result, Petitioner's guilty plea was not knowing, intelligent and voluntary. (ECF No. 36 at 14-17). Specifically, Petitioner argues his plea counsel incorrectly advised him that he would be released from his life sentence after thirty years. Respondent asserts that this claim lacks merit and should be denied. The Court agrees.

Petitioner unsuccessfully raised this ineffectiveness of counsel claim in his state post-conviction relief proceedings. The motion court denied the claim on the merits. In its decision, the Circuit Court for the City of St. Louis held:

> After a plea of guilty the effectiveness of counsel is only cognizable as it affects the voluntariness of the plea. *Coke v. State*, 229 S.W.3d 638, 641 (Mo. App. W.D. 2007); *Salinas v. State*, 96 S.W.3d 864, 865 (Mo. App. S.D. 2002). The movant must show that but for his counsel's errors he would not have pled guilty and would have insisted on going to trial. *Zarhouni v. State*, 313 S.W.3d 713, 716 (Mo. App. W.D. 2010).
>
> The Court finds this claim is without merit. Mr. Barnhart [Petitioner's plea counsel] testified credibly at the evidentiary hearing that he explained to movant he could be released on parole after serving thirty years if he was sentenced to life imprisonment, but the Department of Corrections did not have to release him, and that a difference between a life sentence and a thirty year sentence was the amount of time a person remains on parole after being released. Movant also understood he would have to serve eighty-five percent of the murder and assault sentences before being eligible for parole. Movant could not reasonably have believed there was no difference between a thirty year sentence and a life sentence, given the nature of the guilty plea discussions, and particularly whether the State would accept thirty years rather than life. The Court does not believe movant was credible in claiming to have been misled.

(ECF No. 26-9 at 93-94).

The Missouri Court of Appeals of the Eastern District found Petitioner did not establish ineffective assistance of counsel on the same point because his allegation was refuted

by the record. The appellate court pointed to the fact that during the plea hearing "the [trial] court acknowledged [the] plea agreement amended his charge from first-degree murder, carrying a punishment of life without parole, to second-degree murder with a punishment of life with parole." (ECF No. 26-10 at 4). The appellate court then cited to the portion of the plea hearing wherein Petitioner sought clarification of a life sentence:

> MOVANT [Petitioner]: Life is considered 30 years?
>
> THE TRIAL COURT: I'm not sure what the Department of Corrections considers that. **That's up to the Department of Corrections to determine when you're eligible for parole.** If that's what you're speaking of. Is that your question?
>
> MOVANT: My question is what is considered life?
>
> PLEA COUNSEL: My understanding is it's thirty. The only difference is you're a lifetime parole [sic] instead of writing the number thirty. If he wrote life, he has lifetime parole when he gets out versus thirty is a specific number. And I believe they're not on parole for life. Is that correct, [the State], from your understanding?
>
> THE STATE: That is correct.
>
> THE TRIAL COURT: Does that answer your question?
>
> MOVANT: Yes.

*Id.* (emphasis in original) (citing ECF No. 26-11 at 57).

After outlining the two-part *Strickland v. Washington*, 466 U.S. 668, 687 (1984), standard for an ineffective assistance of counsel claim, the appellate court provided the following analysis and decision:

> "A guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Stanley v. State*, 420 S.W.3d 532, 548-49 (Mo. Banc 2014). A voluntary and intelligent plea must be entered with knowledge of the "direct consequences" of the plea including the nature of the charge to which the plea is offered, the range of punishment, the right to be represented, and the rights that will be waived by pleading guilty. *Simmons*, 432 S.W.3d at 308. Because parole eligibility is considered a "collateral consequence" of the plea, counsel has no obligation to inform a defendant of the parole consequences associated with a

guilty plea. *Id.* (citing *Reynolds v. State*, 994 S.W.2d 944, 946 (Mo. Banc 1999)). Moreover, a movant's expectation of a lower sentence does not make a plea involuntary. *Michaels v. State*, 346 S.W.3d 404, 408 (Mo. App. E.D. 2011). A movant is only entitled to relief if the mistaken belief about his sentence was based on a positive representation on which he was entitled to rely and the mistaken belief was reasonable. *Dobbins v. State*, 187 S.W.3d 865, 866 (Mo. Banc 2006).

Section 558.019.3 states that "any offender who has been found guilty of a dangerous felony . . . and is committed to the department of corrections shall be required to serve a minimum prison term of eighty-five percent of the sentence imposed by the court." The minimum prison term for a life sentence is calculated as 30 years. Section 558.019.4. Thus, the minimum sentence for Movant's life sentence is 25.5 years (85 percent of 30) and minimum sentence for his consecutively served 15-year sentence is 12.75 years (85 percent of 15), resulting in a total minimum sentence of 38.25 years.

In *Smith v. State*, 353 S.W.3d 1, 5 (Mo. App. E.D. 2011), this Court affirmed the motion court's denial of a movant's motion for post-conviction relief, concluding plea counsel was not ineffective in failing to inform the movant that he was required to serve at least 85 percent of his sentence. In concluding that neither the trial court nor plea counsel has any obligation to inform a defendant of parole consequences, this Court emphasized that the movant's alleged ineffective assistance of counsel was based on "a mere failure to inform rather than . . . affirmative misinformation. *Id.*

Here, Movant's mistaken belief that his life sentence meant he would be released after 30-years' imprisonment was unreasonable because a 30-year sentence was only discussed in context with parole eligibility and previous plea negotiations demonstrated an understanding of the difference between a 30-year sentence and a life sentence.

Movant contends that Plea Counsel's response to his question during the plea hearing asking, "What is considered life?" was incomplete and misled him to believe a life sentence would not result in more than 30-years' imprisonment. This mistaken belief, however, is unreasonable given the context of the question during the plea hearing. Before pleading guilty, Movant questioned whether a life sentence was considered 30 years and the [trial] court clarified that Movant's parole eligibility would be determined by the Department of Corrections. Movant reiterated his question and Plea Counsel accurately continued based on the trial court's description of Movant's parole eligibility by stating a life sentence is considered 30 years for purposes of parole eligibility. The State confirmed Plea Counsel's description and the trial court's response to Movant, and Movant stated that his question had been answered. While Plea Counsel did not inform Movant during the plea hearing that he was required to complete 85 percent of the mandatory minimum sentence pursuant to Section 558.019.3, Plea Counsel stated that he had previously described this requirement to Movant. Regardless, Plea

Counsel was not required to inform Movant of the parole eligibility associated with the plea because it was a collateral consequence of the plea. Thus, Plea Counsel's response describing the minimum sentence associated with Movant's plea did not affirmatively misinform Movant regarding the definition of a life sentence.

Moreover, Movant's plea discussions with the state indicate there was an understood difference between a 30-year sentence and life sentence. During the hearing for post-conviction relief, Plea Counsel described the plea discussions between Movant and the State. Plea Counsel noted that during plea negotiations Movant had previously sought and authorized plea agreements ranging from a 30-year sentence to a life sentence with a consecutive five-year sentence. Because Movant's initial charge of murder in the first degree carried a penalty of a life sentence without parole, Plea Counsel stated that he discussed the range of punishment with Movant and expressed that Movant's best hope of getting out of prison was a plea agreement for life with parole. Moreover, Plea Counsel noted he discussed the definition of a life sentence with Movant and informed Movant that the sentence required a minimum of 85 percent of 30 years with a consecutive 15-year sentence served subsequent to completion of the life sentence. Plea Counsel further stated that he stressed the parole board's authority and discretion in making decisions related to granting parole after a minimum sentence was completed. Thus, any mistaken belief by Movant that his life sentence required only 30 years' imprisonment was unreasonable as his authorizations and counteroffers during plea negotiation – which included a rejected 30-year offer – and an explanation of Movant's plea sentencing by Plea Counsel demonstrated an understanding of the distinction between sentences.

Nothing in the record indicates Movant's mistaken belief that there is no difference between a life sentence and a 30-year sentence was reasonable. Considering the context of Plea Counsel's statements during the plea hearing and Movant's previous plea discussions, we cannot say the motion court's findings and conclusions were clearly erroneous. Movant failed to allege any fact, not refuted by the record, demonstrating that Plea Counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney. Thus, the motion court did not clearly err in denying Movant's Rule 24.035 motion for post-conviction relief. Movant's point is denied.

(*Id.* at 4-8)

Petitioner argues the appellate court's decision involved an unreasonable application of

*Strickland* because plea counsel's advice rendered his plea involuntary, and the decision was

based on an unreasonable determination of the facts from the overall record. Petitioner argues the

appellate court "overlooked plea counsel's testimony at the post-conviction evidentiary hearing

that indicated his advice to [Petitioner] was misleading and incomplete as to the full and accurate meaning of a life sentence" and, but for plea counsel's advice, he would have not taken the State's plea offer and would have proceeded to trial.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland*, 466 U.S. 668. In the context of a guilty plea, a defendant who pled guilty upon the advice of counsel may challenge the voluntariness of that plea through a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id*. "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id*. (citation omitted).

To obtain relief based on ineffective assistance of trial counsel, a petitioner must establish (1) that trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687-88 (1984). Petitioner must show that he would not have pled guilty, and would have insisted on going to trial, but for counsel's deficient performance. *See Gumangan v. United States*, 254 F.3d 701, 705 (8th Cir. 2001); *Wilcox v. Hopkins*, 249 F.3d 720, 722 (8th Cir. 2001); *Witherspoon v. Purkett*, 210 F.3d 901, 903 (8th Cir. 2000). To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* The court must then make a determination of whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally

competent assistance." *Id.* In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In determining whether sufficient prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to law." *Id.* at 694.

A court reviewing an ineffective assistance of counsel claim is not required to address both the prejudice and performance components of the *Strickland* inquiry if a petitioner makes an insufficient showing on one component. *Id.* at 697. "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the respondent as a result of the alleged deficiencies." *Id.* "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

When, as here, an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that there is a "deferential standard of review." *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). It is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

Based on the record, the Court finds Petitioner has failed to show the state court applied the *Strickland* test in an objectively unreasonable manner. Petitioner was advised of the range of punishment for each of the charged offenses. The trial court specifically advised him of the different penalties for first-degree murder and the amended charge of second-degree murder. The only difference under the plea agreement, was first-degree murder was life without parole, and for the amended charge of second-degree murder, the sentence would be life with parole. Petitioner does not suggest he misunderstood the range of punishment of life in prison for first-degree murder. Therefore, the only possible confusion could be on when he might be released on parole during his life sentence for second-degree murder.[1]

Looking at the totality of the circumstances and evidence, the trial court explained the sentence for the reduced charge of second-degree murder was life, eligible for parole. Petitioner then asked if life is considered thirty years. The trial court advised him the Department of Corrections determines when he is eligible for parole. Petitioner then asked, "what is considered life?" (ECF No. 26-11 at 57). Plea counsel explained the he understood it is thirty years, but Petitioner would be on parole longer on a life sentence than on a thirty-year sentence.

Petitioner cannot overcome the presumption of effective assistance of counsel because his plea counsel's explanation to him during the plea hearing that his life sentence would be treated as thirty years for parole eligibility was not outside the range of professionally competent assistance. Mo. Rev. Stat. § 558.019.4 provides, "[f]or the purpose of determining the minimum prison term to be served . . . [a] sentence of life shall be calculated to be thirty years." Plea counsel had previously advised Petitioner he would have to serve at least 85 percent of the thirty years before becoming eligible for parole on that count. He would also have to serve at least 85

---

[1] Petitioner also pleaded guilty to sentences of life with parole on the two armed criminal action counts. However, he does not challenge these sentences.

percent of the consecutive fifteen-year sentence before becoming eligible for parole on that count. Plea counsel properly advised Petitioner as to how the Department of Corrections would consider a life sentence for purposes of parole. The State prosecutor and the trial court both advised Petitioner that his maximum sentence for second-degree murder was life in prison. No one told Petitioner he would be released after thirty years other than by being granted parole by the Department of Corrections.

Additionally, even if trial counsel's statement of parole eligibility under a life sentence was arguably confusing or misleading to Petitioner, the trial court, in response to Petitioner's direct question whether a life sentence would be considered thirty years, explained it would be within the discretion of the Missouri Department of Correction to determine when he would be eligible for parole. Petitioner confirmed at the plea hearing that he understood the court and counsel's explanation of a life sentence.

Moreover, an independent review of the June 10, 2016 post-conviction hearing supports counsel's sufficient performance in explaining a life sentence to Petitioner. *See* (ECF No. 26-12). Counsel testified under oath that prior to the plea hearing he explained the "85 percent rule" to Petitioner, which meant the life sentence required a minimum of 85 percent of thirty years with a consecutive fifteen-year sentence served subsequent to completion of the life sentence:

Q: Did you discuss the 85 percent rule with him?

A: Yes.

Q: Did the 85 percent rule apply to Murder in the Second Degree alone or were there other charges that it applied to as well?

A: It would've been - - yeah, it would've been the - - well, really, the Assault First and the Murder Second would've been 85 percent mandatory minimum.

Q: And when you tell him the life – you say life plus 15?

13

A: Yes.

(ECF No. 26-12 at 17). Counsel testified he explained the term "life sentence" to Petitioner, and

it was his common practice to do so:

> Q: Do you recall during discussions with Mr. Pollard whether he ever asked you what a life sentence meant?
>
> A: I would've explained to him. I mean I know on the record we discussed the difference between life and 30. I would've told him that a life - - I mean I would've told him that the Missouri Department of Corrections considers life 30. I would've told him that. And I would've told him that 85 percent mandatory minimum and the parole board determines - - you know, they're the ultimate decider of things.
>
> Q: Do you have a specific recollection of that discussion with him?
>
> A: It's the normal course of what I would do. I mean it's something I know. I mean that's talked about in every case.
>
> . . .
>
> Q: Okay. And you had discussed with your client that life was considered 30 years but that there were additional consequences, which is that you would be on parole for longer than you would on a 30-year sentence, correct?
>
> A: Correct. And I, also, explained the consecutive time. The Assault First would be 85 percent mandatory minimum as well.
>
> Q: So you had discussed with him that his plea agreement wasn't a 30-year plea agreement, right?
>
> A: No. I wish it was. I mean that was what we were trying to get.
>
> Q: So you have explained it to Mr. Pollard that he wasn't looking at 85 percent of 30 years, he was looking at significantly more time than that, correct?
>
> A: I mean at the minimum 85 percent of the 30, and then you've got - - then you've got to do that sentence. Then you have the next sentence to do. That's the consecutive time. Running wild, they call it. And then you have to do an 85 percent minimum of the 15.
>
> Q: And you're using the phrase minimum of that because you understand that the parole board makes those decisions, correct?
>
> A: Someone could do 90, 95, up to 100 percent of that. That is correct.

Q: And it's your practice to inform your clients that the parole board has a lot of power and authority in these situations, correct?

A: Correct.

Q: And in this case in your conversations with Mr. Pollard, would you have made sure that he understood that the parole board had a lot of authority and power in this situation?

A: That's my standard practice.

*Id.* at 21-22, 31-32. Counsel further testified to discussing the "full range of punishment for each charge" early on in the case "from day one." *Id.* at 28-29.

Also noteworthy is the sentencing transcript from March 10, 2014, which does not support Petitioner's argument that his plea was involuntary *because* his counsel failed to explain a "life sentence." ECF No. 26-11 at 79-107. To the contrary, Petitioner attempted to withdraw his guilty plea prior to sentencing because he did not "understand why [his] lawyer convinced [him] to plead guilty with all the exculpatory evidence in [his favor]" as he had "newly discovered evidence from a witness who [would] verify that during the time of the murder [he] was in her area." *Id.* at 83. Petitioner also argued his counsel "forced [him] to sign the plea using [his] mother as a vehicle to scare [him] into signing[.]" *Id.* No mention was made of his alleged misunderstanding of a life sentence.

Moreover, as the appellate court held, "any mistaken belief by [Petitioner] that his life sentence required only 30 years' imprisonment was unreasonable" because he authorized his plea counsel to offer a 30-year sentence, which was rejected by the State. (ECF No. 26-10 at 4-8). This Court agrees that such negotiations further demonstrated Petitioner's understanding of the distinction between a life sentence and a 30-year sentence.

In a comparable case, *Williams v. Wallace*, No. 4:15-CV-00534-AGF, 2017 WL 6731722 (E.D. Mo. Dec. 29, 2017), petitioner filed a habeas petition arguing his plea was involuntary because his counsel failed to explain he might have to serve more than 30 years under a life sentence before becoming eligible for parole. *Id.* at *2. In denying the claim, this Court held:

> Here, the Court is bound by the Eighth Circuit's decision in *Plunk v. Hobbs*, 766 F.3d 760 (8th Cir. 2014), to conclude that Petitioner's claim must be rejected. In *Plunk*, the habeas petitioner asserted that plea counsel was ineffective by not advising him "accurately" about when he would be eligible for parole. The Eighth Circuit held that although some state courts "have extended the reasoning of the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010)—concerning advice about deportation consequences—to require advice about parole eligibility, any such extension of the Sixth Amendment would be a new rule of constitutional law, inapplicable on collateral review," *Plunk*, 766 F.3d at 769 (citations omitted). *Plunk* comports with the Supreme Court's pronouncement in *Padilla* that the Court did not have to consider whether, in general, there was "a distinction between direct and collateral consequences [of a guilty plea] to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland* . . . because of the unique nature of deportation." *Padilla*, 559 U.S. at 365.

*Id.* at *4. Following *Williams* and considering the determinations of the state court in this case as well as a review of the entire record, including transcripts of the plea, sentencing, and post-conviction hearing proceedings, this Court finds that Petitioner has not satisfied his heavy burden to establish his plea counsel's performance fell below an objective standard of reasonableness.

Petitioner has also not established prejudice as it is unlikely the Missouri courts would have overturned his conviction on this basis. The appellate court considered Petitioner's ineffective assistance of counsel claim and affirmed the motion court's denial of it, as being refuted by the record. Petitioner has not shown that his defense was prejudiced by plea counsel's actions because, if he had not pleaded guilty to the amended count of second-degree murder on Friday March 7, 2014, he would have gone to trial on Monday March 10, 2014, on the original

16

charge of first-degree murder. At that trial Petitioner's confession to murdering one victim and shooting another would have been presented to the jury. If convicted, he would have then faced a sentence of life in prison without parole.

Therefore, Petitioner did not demonstrate ineffective assistance of counsel. This Court does not find the state appellate court's decision regarding Petitioner's ineffective assistance claim is contrary to, nor did it involve an unreasonable application of, clearly established federal law. Further, the state appeals court decision did not involve an unreasonable determination of the facts in light of the evidence.

Petitioner's first claim for relief will be denied.

**B. Ground Two: Ineffective assistance of plea counsel for failure to file a motion to suppress historical cell phone records seized without a warrant.**

In his second ground for relief, Petitioner asserts his plea counsel was ineffective for failing to file a motion to suppress cell phone records which were allegedly seized prior to the issuance of a search warrant and used by detectives to interrogate Petitioner about his whereabouts on the night of the crime. Petitioner argues a motion to suppress would have been successful and, as a result, he would have declined to plead guilty because the prosecution would have been unable to use the evidence at trial to show Petitioner traveled to the area on the night of the murder or use his answers in response to the detective's questioning about such records. Petitioner admits he did not raise this ground in state court due to ineffective assistance of post-conviction counsel but argues it should not be procedurally defaulted because of *Martinez v. Ryan*, 566 U.S. 1 (2012).

In response, Respondent cites to *Mayberry v. State*, 137 S.W.3d 543, 547 (Mo. App. 2004) for the proposition that a "complaint contending that counsel failed to render assistance to the standard required by law by failing to file and pursue a motion to suppress is waived by a

voluntary entry of a guilty plea." (ECF No. 26 at 10). Respondent argues because this instant claim was waived by his guilty plea under Missouri law, post-conviction counsel was not ineffective for failing to raise it in state court, and Petitioner cannot overcome the default under *Martinez*. The Court agrees with Respondent.

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848)).

A habeas petitioner under § 2254 may avoid procedural default only by showing that there was cause for the default and resulting prejudice, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). In order to establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

In *Coleman v. Thompson*, the Supreme Court established the general rule that counsel's errors in post-conviction proceedings do not qualify as a cause for default. 501 U.S. 722, 753-75 (1991). However, in *Martinez v. Ryan*, the Supreme Court recognized a narrow exception to this rule: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review

18

proceeding, there was no counsel or that counsel was ineffective." 566 U.S. 1, 17 (2012). The Supreme Court also held that a petitioner must demonstrate the underlying ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14; *see also Isaac v. Wallace*, No. 4:13-cv-411 SNLJ-SPM, 2016 WL 855858, at *6 (E.D. Mo. Feb. 1, 2016).

"As with any ineffective assistance of counsel claim, a petitioner making a *Martinez* argument to excuse procedural default must show that counsel's performance fell below an objective standard of reasonableness and that the petitioner was prejudiced as a result of that failure." *Tolen v. Norman*, No. 4:10-CV-2031-RWS, 2019 WL 3531958, at *2 (E.D. Mo. Aug. 2, 2019), certificate of appealability denied, No. 19-2859, 2020 WL 913438 (8th Cir. Feb. 13, 2020), cert. denied, 207 L. Ed. 2d 174 (June 8, 2020) (citing *Strickland*, 466 U.S. at 687-88); *Hayes v. Bowersox*, No. 4:12-CV 2246-JMB, 2016 WL 659081, at *6 (E.D. Mo. Feb. 18, 2016) (Petitioner "must demonstrate that he has a substantial claim of ineffective assistance of counsel for failure to file a motion to suppress evidence."). Thus, Petitioner must demonstrate his plea counsel's performance in not filing a motion to suppress the cell phone evidence was objectively unreasonable and there is a reasonable probability that the outcome of his case would have been different if counsel had raised the claim. *Armstrong v. Gammon*, 195 F.3d 441, 444 (8th Cir. 1999). Petitioner can demonstrate neither prong of this inquiry.

First, plea counsel did not fall below an objective standard of reasonableness because the ineffectiveness claim Petitioner raises here lacks merit. Petitioner argues a motion to suppress would have been granted by the trial court because of *Carpenter v. United States*, 138 S. Ct. 2206 (2018), which requires law enforcement to obtain a search warrant when acquiring historical cell-site location information. (ECF No. 36 at 18). Petitioner pled guilty on March 7,

2014, approximately four years prior to the *Carpenter* decision. Plea counsel cannot be ineffective for failing to adhere to the decision of a future case. *See e.g., United States v. Carrano*, 340 F. Supp. 3d 388, 397 (S.D.N.Y. 2018) (rejecting defendant's *Strickland* argument that his attorney should have preemptively moved to suppress cell records before *Carpenter* was issued); *Campbell v. Hansen*, No. 19-CV-00755-DDD, 2020 WL 6487421, at *7 (D. Col. Nov. 4, 2020) ("The Supreme Court 'has not held that *Carpenter* is retroactively applicable to cases on collateral review, nor does any combination of cases necessarily dictate its retroactivity.'") (quoting *In re Symonette*, No. 19-12232, 2019 U.S. App. LEXIS 20428, *4 (9th Cir. 2019)). Petitioner does not cite to any mandatory case law in existence when he pled guilty, which held the same as *Carpenter*.

Even if *Carpenter* was retroactively applicable to the instant case, "[a] claim that counsel was ineffective for failing to file and pursue a motion to suppress is waived by the voluntary entry of a guilty plea." *Ramsey v. State*, 182 S.W. 3d 655, 657 (Mo. App. 2005); *see Braxton v. State*, 271, S.W. 3d 600, 602 (Mo. App. 2007) (rejecting a post-conviction claim asserting counsel was ineffective for failing to file, or advise the defendant about the possibility of pursuing, a motion to suppress evidence); *Redeemer v. State*, 979 S.W. 2d 565, 569 (Mo. App. 1998) (by entering a guilty plea, a defendant "generally waive[s] any further complaints that he might have had regarding his counsel's failure to investigate and prepare for trial"). After a plea of guilty, the effectiveness of counsel is only cognizable and relevant as it affects the voluntariness of the plea. *Coke v. State*, 229 S.W.3d 638, 641 (Mo. App. 2007); *Salinas v. State*, 96 S.W.3d 864, 865 (Mo. App. 2002).

Although Petitioner argues he would not have pled guilty if his plea counsel filed a motion to suppress the cell phone records, the record reflects that Petitioner's plea was

intelligently and voluntarily made despite knowing his counsel only filed a motion to suppress his confession to the police. In fact, the Missouri Court of Appeals explicitly determined his plea was voluntary: "During the plea hearing, [Petitioner] repeatedly told the court that no one had forced him to plead guilty, that he had enough time to think about the plea agreement, that he had discussed the plea agreement with his mother and family members, and that he had discussed his rights with plea counsel." (ECF No. 26-3 at 7); *State v. Pollard*, 469 S.W.3d 506 (Mo. App. 2015).

"It is also well settled that 'the decision whether to file a motion to suppress is a matter of trial strategy' which is virtually unchallengeable." *Pampkin v. Bowersox*, No. 4:16-CV-00561-JCH, 2016 WL 6577189, at *4 (E.D. Mo. Nov. 7, 2016) (quoting *Smith v. State*, 972 S.W.2d 551, 556 (Mo. App. 1998)). "Missouri courts have consistently held that 'reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance.'" *Id.* (citing *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)). As a result, defense counsel is afforded "wide discretion in determining what strategy to use in defending his or her client." *Stevens v. State*, 353 S.W.3d 425, 431 (Mo. App. 2011).

Lastly, Petitioner cannot show that he was prejudiced by counsel's performance. Petitioner's plea counsel filed a motion to suppress his confession to police, which was denied. (ECF No. 26-11 at 48). After learning of the denial, Petitioner voluntarily chose to plead guilty knowing his confession would be presented to a jury. Petitioner not only admitted his crimes to the police, but also testified at his plea hearing that he murdered the victim and injured a second victim:

Court: Is it true you shot at and killed Ira Stelle?

Petitioner: Yes.

21

> Court: And you used a weapon, a gun?
>
> Petitioner: Yes.
>
> Court: Is it also true you shot at and injured seriously Syunie Staples? Is that true?
>
> Petitioner: Yes.

(ECF No. 26-11 at 102).

During the post-conviction hearing, plea counsel testified it would have been "hard to overcome" Petitioner's confession to the police because "the chances of winning the case is very slim because juries go by confessions." (ECF No. 26-12 at 23). Thus, the Court does not find that plea counsel's failure to file a motion to suppress regarding his cell phone records would have prejudiced Petitioner's case as the evidence against Petitioner undercut the probability, if any, that Petitioner would have decided not to plead guilty to the amended charge and instead insisted on going to trial.

Petitioner's second claim for relief will be denied.

### C. Ground Three: Ineffective assistance of plea counsel for failure to argue in a motion to suppress that Petitioner's confession was involuntary due to conditions of pre-detention confinement.

In his third ground for relief, Petitioner asserts plea counsel was ineffective by failing to challenge the admissibility of his confession based on the length of time and conditions of his pre-charge detention. (ECF No. 36 at 19-20). Petitioner states he turned himself into the police on July 3, 2012 at approximately 7:30 p.m., and the police arrested him the following day on July 4, 2012 at 1:30 p.m. Plaintiff avers that during the eighteen (18) hour detention he was not permitted to use the phone, sleep, or use the restroom prior to his arrest. Petitioner argues that a reasonably competent attorney in similar circumstances would have included these facts in a motion to suppress to demonstrate his confession was involuntary. As with Ground Two, Petitioner admits

he did not raise this issue in state court due to ineffective assistance of post-conviction counsel but argues it should not be procedurally defaulted because of *Martinez*. Thus, as discussed above, Petitioner must demonstrate he has a substantial claim of ineffective assistance of counsel under *Strickland*.

This Court cannot find that plea counsel's performance fell below an objective standard of reasonableness because the ineffectiveness claim Petitioner raises here lacks merit. At the suppression hearing one of the detectives who interrogated Petitioner prior to his arrest testified he was offered food and drink, and had the opportunity to use the restroom:

> Q: And so during the times that the defendant was in custody at the police department, did you offer the defendant anything to drink or eat during that time?
>
> A: Yes.
>
> Q: Okay. And is that the usual process when you have a suspect down there?
>
> A: Yes.
>
> Q: Okay. And in this case did the defendant actually accept the offer of drink and food at any point in time?
>
> A: Yes.
>
> Q: Okay. And while Mr. Pollard was down there, did you ever at any point in time refuse to allow him to use the restroom?
>
> A: No.

(ECF No. 26-11 at 34-35). The detective also testified Petitioner confessed *after* the interview was over, *after* he was booked for the homicide, and *after* he was placed into a holding cell. ECF No. 26-11 at 25-30. The detective testified Petitioner "was again requesting to speak with me, wanted to talk to me more about this incident" so he was "placed back in [the] interview room." (*Id.* at 30).

"Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Petitioner has not provided any evidence, and none is in the record, to contradict the detective's testimony stating Petitioner was permitted to use the restroom, had the opportunity to eat and drink, and provided a confession after the interview was completed. Without some evidence to discount the detective's testimony or corroborate Petitioner's account of an allegedly involuntary confession based on the length of time and conditions of his pre-charge detention, Petitioner has not demonstrated his confession would have been suppressed.

Moreover, as discussed above, it is well-settled that the decision whether to file a motion to suppress is a matter of trial strategy which is virtually unchallengeable, especially here where it would have failed on the merits. Notably, Petitioner's plea counsel did file a motion to suppress his confession based on the detective's failure to re-Mirandize him after the interview was over, and when Petitioner requested to speak to the detective again. In denying the motion to suppress, the circuit court held at the suppression hearing:

> COURT: . . . I believe that your client, after invoking his right to have an attorney before he spoke, reinitiated conversations with the police. The police, in their investigation, it's their job to investigate crimes. They cannot turn a deaf ear to someone that wants to talk to them. They have to listen. And if they want to continue talking, they have a right to ask them questions. He was Mirandized at one time. I think that was sufficient. He reinitiated the conversation. And therefore, your motion to suppress the statements is denied, under the facts of this case.

(ECF No. 26-11 at 47-48). The motion court found it factually relevant that after the interview was over Petitioner sought out a detective for the purpose of confessing. Therefore, it is unlikely Petitioner would have prevailed on a motion to suppress based on coercive police activity. The amount of time Petitioner was detained prior to arrest also does not automatically give rise to the

conclusion that Petitioner's confession was involuntary. *See Johnson v. Steele*, No. 4:13-CV-00278-HEA, 2020 WL 978038, at *29 (E.D. Mo. Feb. 28, 2020) (sixteen-hour interrogation does not automatically prove coercive police activity); *Bickley v. Bowersox*, No. 4:13-CV-1504 HEA, 2016 WL 3903213, at *4 (E.D. Mo. July 19, 2016) (same). Thus, this Court does not find that plea counsel's performance fell below an objective standard of reasonableness because the ineffectiveness claim Petitioner raises here lacks merit and is not "substantial" under *Martinez*.

Initial post-conviction counsel was not ineffective for failing to present a claim that lacks merit. "The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). Therefore, the Court finds post-conviction counsel was not ineffective for failing to present non-meritorious or unsupported claims in the amended 24.035 motion. Thus, Petitioner has failed to establish cause and prejudice to excuse the procedural default. *Watkins v. Pash*, No. 4:12-CV-2393 NAB, 2016 WL 3015161, at *6 (E.D. Mo. May 26, 2016).

Petitioner's third claim for relief will be denied.

**D. Ground Four: Ineffective assistance of plea counsel for failure to argue in the motion to suppress that Petitioner's waiver of his *Miranda* rights was not voluntary.**

In his fourth ground for relief, Petitioner asserts plea counsel was ineffective by failing to include in the motion to suppress an argument that his initial waiver of his *Miranda* rights did not apply to questioning that occurred after the detectives shifted their questions about a separate shooting, and then continued their questioning after he requested an attorney. Specifically, Petitioner asserts: "After reading him his *Miranda* rights, the detectives first interviewed [Petitioner] about the July 3, 2012, shooting at his home. In his second interview, the detectives improperly shifted their questioning without warning to the murder of Ira Steel [the victim here]."

25

(ECF No. 36 at 21). Petitioner argues that once he realized the detectives were questioning him about a separate shooting, he asserted his right to an attorney, which was ignored. *Id.* Petitioner argues a reasonably competent attorney in similar circumstances would have included these facts in a motion to suppress to demonstrate his right to remain silent was violated. As with Grounds Two and Three, Petitioner admits he did not raise this issue in state court due to ineffective assistance of post-conviction counsel but argues it should not be procedurally defaulted because of *Martinez*. Thus, as discussed above, Petitioner must demonstrate that he has a substantial claim of ineffective assistance of counsel under *Strickland*.

This Court cannot find that plea counsel's performance fell below an objective standard of reasonableness because the ineffectiveness claim Petitioner raises here lacks merit. The Eighth Circuit has unequivocally held that police officers may change the subject of a suspect's interview without affecting the validity of his waiver of Miranda rights. *McKee v. Nix*, 995 F.2d 833 (8th Cir. 1993) (citing *Colorado v. Spring*, 479 U.S. 564, 577 (1987) ("a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege")).

Moreover, at the suppression hearing the detective who interrogated Petitioner testified that once Petitioner invoked his right to an attorney the interview was terminated.

Q: After [Petitioner] shut down, did [Petitioner] say something in particular to you?

A: Yes.

Q: What did he say?

A: He invoked his right to an attorney.

Q: So you don't have to give the exact words, essentially said he didn't want to talk to you without an attorney?

A: Correct.

Q: What did you do in response to that?

A: Terminated the interview.

(ECF No. 26-11 at 24-25). The detective then testified to the veracity of a video that supported his testimony. (*Id.* at 25).

Notably, the motion court directly asked Petitioner's plea counsel during the suppression hearing whether it was Petitioner's position that the interview stopped when he invoked his right to an attorney:

COURT: When he asserted his rights, they ceased the interview?

MR. BARNHART: Yes.

(ECF No. 26-11 at 45). Unless a suspect makes "an unambiguous or unequivocal request for counsel," officers have no obligation to stop questioning him. *Davis v. United States*, 512 U.S. 452, 461-62 (1994). The record reflects, as confirmed by Petitioner's counsel on the record with Petitioner present, that the interrogation ended the moment he invoked his rights to an attorney.

As a result, this Court does not find plea counsel's performance fell below an objective standard of reasonableness for failure to file a motion to suppress based on the shifted questioning or the invocation of his right to an attorney because such arguments lack merit and the ineffectiveness claim is therefore not "substantial" under *Martinez*.

Petitioner's fourth claim for relief will be denied.

### E. Ground Five: Ineffective assistance of trial counsel for improperly advising Petitioner to not testify at the suppression hearing.

In his fifth ground for relief, Petitioner asserts plea counsel was ineffective by advising Petitioner not to testify at the suppression hearing despite expressing his desire "to shed light on how long he had been in custody and that he did not know what the second interrogation was

about." (ECF No. 36 at 23). Petitioner asserts his counsel informed him "that it would not be a good idea because the judge would not find him credible." *Id.* As with Grounds Two, Three and Four, Petitioner admits he did not raise this issue in state court due to ineffective assistance of post-conviction counsel but argues it should not be procedurally defaulted because of *Martinez*. Thus, as discussed above, Petitioner must demonstrate that he has a substantial claim of ineffective assistance of counsel under *Strickland*.

"It is well established that decisions as to what evidence to present at a suppression hearing rest with the attorney." *Snyder v. Denney*, No. 13-0459-CV-W-DW-P, 2013 WL 4543231, at *12 (W.D. Mo. Aug. 27, 2013) (citing *Johnson v. State*, 333 S.W.3d 459, 463-64 (Mo. banc 2011) (citation omitted) ("Generally, the selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable."); *see also Jackson v. Norman*, No. 4:08-CV-0593 ERW/TCM, 2011 WL 3104538, at *18 (E.D. Mo. June 27, 2011) ("We also may not grant post-conviction relief due to an attorney's failure to call a movant to testify at a suppression hearing.") (citing *Pinkard v. State*, 694 S.W.2d 761, 762 (Mo. App. 1985)); *Johnson v. Norris*, 537 F.3d 840 (8th Cir. 2008) (holding it is reasonable trial strategy not to call a defendant to testify at a suppression hearing unless he can "really help himself" because there is a risk that testimony by the defendant would "open the door to potentially damaging evidence" and because the defendant "puts himself subject to cross-examination by the prosecutor").

Petitioner argues his counsel advised Petitioner not to testify due to a concern for his credibility. A concern for credibility is a strategic decision upon which an ineffective claim cannot stand. *See Morrison v. State*, 75 S.W.3d 893, 897 (Mo. App. 2002) ("[w]ithout more, advice from counsel not to testify is not deemed ineffective assistance of counsel if it might be

considered sound strategy") (citing *Rousan v. State*, 48 S.W.3d 576, 585 (Mo. banc 2001)). Thus, this Court cannot find that plea counsel's performance fell below an objective standard of reasonableness because the ineffectiveness claim Petitioner raises here lacks merit and is not "substantial" under *Martinez*.

Petitioner's fifth claim for relief will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Byron Pollard-El, Jr. for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right, and this Court will not issue a Certificate of Appealability. 28 § U.S.C. 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

So Ordered this 25th day of February, 2021.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**